IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Gregory McHam, | ) | Case No. 8:13-cv-2492-TMC-JDA |
| | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Larry Cartledge, | ) | |
| Warden, Perry Correctional Institution, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

This matter is before the Court on Respondent's motion for summary judgment [Doc. 25]. Petitioner, proceeding pro se, is a state prisoner who seeks relief under 28 U.S.C. § 2254. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the District Court.

Petitioner filed this Petition for writ of habeas corpus on September 9, 2013.[1] [Doc. 1.] On January 27, 2014, Respondent filed a motion for summary judgment and a return and memorandum. [Docs. 24, 25.] On January 28, 2014, the Court issued an Order in accordance with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of the summary judgment/dismissal procedure and of the possible consequences if he failed to adequately respond to the motion. [Doc. 26.] On February 21, 2014, Petitioner filed a response in opposition to Respondent's motion. [Doc. 31.] Accordingly, the motion is ripe for review.

_____

[1] A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court. *See Houston v. Lack*, 487 U.S. 266, 270 (1988). Therefore, this action was filed on September 9, 2013. [Doc. 1-2 (envelope stamped by correctional institution on September 9, 2013).]

## BACKGROUND[2]

Petitioner is presently confined and serving his sentence at Tyger River Correctional Institution ("Tyger"). [Doc. 23.][3] In August 2002, a Spartanburg County grand jury indicted Petitioner for possession with intent to distribute crack cocaine and trafficking in cocaine. [Doc. 24 at 1.] Petitioner proceeded to trial, represented by Thomas A.M. Boggs ("Boggs"), and was convicted in September 2003. [*Id.*] Judge J. Derham Cole sentenced Petitioner to concurrent sentences of twenty-five years for the trafficking charge and ten years for the possession charge. [*Id.* at 1–2.]

**Direct Appeal**

Petitioner timely filed and served a notice of appeal. On March 2, 2005, Eleanor Duffy Cleary, of the South Carolina Office of Appellate Defense filed an *Anders* brief[4] on Petitioner's behalf in the South Carolina Court of Appeals, as well as a petition to be relieved as counsel. [*Id.* at 2] The brief raised the following issue:

> Did the lower court err in refusing to suppress the evidence that was seized as a result of an unlawful search of the vehicle appellant was driving, which

---

[2] Petitioner concedes that Respondent's recitation of the procedural history of the case is correct and incorporates it by reference into his response [Doc. 31 at 1.] Though the Court has reviewed the record in its entirety, the Court has cited to the Respondent's motion for purposes of the background section and incorporates by reference its citations to the record.

[3] On January 23, 2014, Petitioner filed a notice of change of address updating his address to Tyger from Perry Correctional Institution. [Doc. 23.] A prisoner's immediate custodian—the warden of the facility where the prisoner is being held—is the proper respondent in a habeas corpus action because the immediate custodian has the power to produce the prisoner's body before the habeas court. *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004). If a prisoner properly files a habeas petition naming the prison warden as the respondent and is relocated to another prison before the court decides whether or not to grant the petition, the court "retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release." *Id.* at 441 (discussing *Ex parte Endo*, 323 U.S. 283 (1944)). Thus, this Court retains jurisdiction over the Petition following Petitioner's transfer to Tyger.

[4] A brief filed pursuant to *Anders v. California*, 386 U.S. 738 (1967), effectively concedes the appeal lacks a meritorious claim.

2

occurred when the officer opened the passenger door without an articulable reason that crime was afoot?

[*Id.* at 4.]  Petitioner filed a pro se response raising two issues:

Issue 1: [Petitioner] argues that the trial court erred in finding that there was reasonable suspicion to justify the warrantless search of this vehicle and in failing to suppress the evidence obtained as a result of that search.

Issue 2: The lower court erred in failing to grant a directed verdict on trafficking in more than one hundred grams of cocaine and possession of crack with intent to distribute based upon the insufficiency of the evidence.

[*Id.*]  On July 26, 2005, the South Carolina Court of Appeals issued a per curiam opinion dismissing Petitioner's appeal and granting his appellate counsel's motion to be relieved.

[*Id.*] Petitioner's motion for rehearing was denied on September 20, 2005. [*Id.*] Petitioner then filed a petition for writ of certiorari to the South Carolina Supreme Court, presenting two issues:

Issue 1: Did the Court of Appeals err in the granting of *Anders v. California*, 366 U.S. 738 (1967), holding that there existed reasonable suspicion to justify the warrantless search of the vehicle and in failing to suppress the evidence obtained as a result of that search?

Issue 2: Did the Court of Appeals err in holding that a directed verdict should have been denied?

[*Id*. at 3.] The South Carolina Supreme Court denied certiorari on November 14, 2006, and remittitur issued on November 16, 2006. [*Id.*]

**PCR Proceedings**

Petitioner, proceeding pro se, filed an application for post-conviction relief ("PCR") on January 26, 2007.  [*Id.*]  Petitioner raised the following grounds for relief:

Issue 1: The [Petitioner] was denied the right to effective assistance of trial counsel by counsel's failure to object to the

3

admission of drug evidence that was seized in violation of his Fourth Amendment right against illegal search and seizure.

Issue 2: The [Petitioner] was denied the right to effective assistance of appellate counsel by counsel's failure to raise and argue the solicitor's improper argument.

Issue 3: The [Petitioner] was denied the right to effective assistance of trial counsel by counsel's failure to object to trial court's improper comment on the facts.

Issue 4: The [Petitioner] was denied the right to effective assistance of trial counsel by counsel's failure to object to solicitor's comment on his post-arrest silence and right not to testify and present evidence.

[Doc. 24-15 at 8–11.]

A hearing was held on the PCR application on April 7, 2009, where Petitioner was represented by attorney John E. Rogers, II. [Doc. 24 at 3.] Testimony was received from Petitioner and from Boggs. [*Id*.] On March 24, 2010, the PCR court filed an order denying and dismissing the application with prejudice. [App. at 655–62.] After examining each of Petitioner's claims, the PCR court's order concluded the Petitioner "failed to carry his burden to show that trial counsel's representation fell below the standard of professional reasonableness for a criminal defense attorney . . ." [Doc. 24-5 at 60.]

A notice of appeal was timely filed and served. [Doc. 24 at 4.] On December 8, 2010, Kathrine H. Hudgens of the South Carolina Commission on Indigent Defense filed a petition for writ of certiorari on Petitioner's behalf in the South Carolina Supreme Court, seeking review of the PCR court's decision and raising the following issue:

Did the PCR judge err in refusing to find counsel ineffective, based on the erroneous assumption that the Court of Appeals ruled upon an unpreserved search issue in the direct appeal review pursuant to *Anders v. California*, 386 U.S. 738 (1967), for failing to preserve for appellate review the admission of

4

drug evidence seized as the result of an unlawful search when counsel moved pre-trial to suppress the drug evidence but then failed to object during trial when the drugs were introduced into evidence?

[*Id.*] On April 4, 2012, the Supreme Court of South Carolina granted certiorari and directed the parties to brief the issues. [*Id.*] The Supreme Court issued a published opinion on July 17, 2013, affirming the PCR court's order and judgment, as modified. [*Id*. at 5.] Remittitur was issued on August 7, 2013. [*Id.*]

### Petition for Writ of Habeas Corpus

As stated, Petitioner filed this Petition for writ of habeas corpus on September 9, 2013, pursuant to 28 U.S.C. § 2254. [Doc. 1.] Petitioner asserts the following grounds for relief, quoted substantially verbatim:

**Ground One**:    Whether state court [was] unreasonable when it ruled that ineffective assistance of counsel did not prejudice [Petitioner] because prosecution's case was weak and counsel's errors led to admission of unduly prejudicial evidence?

*Supporting Facts:*    [Petitioner] contends he received ineffective assistance of trial counsel because counsel failed to review an in limine motion to suppress drug evidence. [Petitioner] asserts his Fourth Amendment rights were violated when an officer at a traffic checkpoint opened the passenger's side door of the vehicle he was driving, which revealed a package of crack cocaine inside the car and led to discovery of additional drug evidence. The state contends counsel was not ineffective and the officer's action was justified by concerns for officer safety.

[Doc. 1 at 5–6.]

## APPLICABLE LAW

### Liberal Construction of Pro Se Petition

Petitioner brought this action *pro se*, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, a pro se petition is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the petitioner's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such

that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
>> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations

7

> (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

**Habeas Corpus**

### *Generally*

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998).  Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;  or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Williams v. Taylor*, 529 U.S. 362, 410 (2000).  "A state court's

8

determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision," and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011). Moreover, state court factual determinations are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### *Procedural Bar*

Federal law establishes this Court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id.* The separate but related theories of exhaustion and procedural bypass operate to require a habeas petitioner to first submit his claims for relief to the state courts. A habeas corpus petition filed in this Court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

#### *Exhaustion*

Section 2254 contains the requirement of exhausting state court remedies and provides as follows:

> (b)    (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—

9

> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)    (i) there is an absence of available State corrective process; or
>
>       (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254. The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. *Id.* § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). Thus, a federal court may consider only those issues that have been properly presented to the highest state court with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for post-conviction relief ("PCR"). State law requires that all grounds for relief be stated in the direct appeal or PCR application. S.C. App. Ct. R. 203; S.C. Code Ann. § 17-27-90; *Blakeley v.*

10

*Rabon*, 221 S.E.2d 767, 770 (S.C. 1976). If the PCR court fails to address a claim as required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment. S.C. R. Civ. P. 59(e). Failure to do so will result in the application of a procedural bar to that claim by the South Carolina Supreme Court. *Marlar v. State*, 653 S.E.2d 266 (S.C. 2007).[5] Further, strict time deadlines govern direct appeal and the filing of a PCR application in the South Carolina courts. For direct appeal, a notice of appeal must be filed and served on all respondents within ten days after the sentence is imposed or after receiving written notice of entry of the order or judgment. S.C. App. Ct. R. 203(b)(2), (d)(1)(B). A PCR application must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45(A).

If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. *Richardson v. Turner*, 716 F.2d 1059, 1062 (4th Cir. 1983); *Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977). Therefore, in a federal petition for habeas relief, a petitioner may present only those issues that were presented to the highest South Carolina court through direct appeal or through an appeal from the denial of a PCR application, regardless of whether the court actually reached the merits of the claim.[6]

---

[5]In *Bostick v. Stevenson*, 589 F.3d 160 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not uniformly and strictly enforced the failure to file a motion pursuant to Rule 59(e) as a procedural bar. 589 F.3d at 162–65. Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the Court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

[6]In *State v. McKennedy*, the South Carolina Supreme Court reiterated that a petition for discretionary review to the South Carolina Supreme Court in criminal and post-conviction cases is outside South Carolina's standard review process, and therefore, "petitions for rehearing and certiorari following an adverse Court of

11

*Procedural Bypass*

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner seeks habeas corpus relief based on an issue he failed to raise at the appropriate time in state court, removing any further means of bringing that issue before the state courts.  In such a situation, the petitioner has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition.  *See Smith v. Murray*, 477 U.S. 527, 533 (1986).  The United States Supreme Court has stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts.  *See id.*  Bypass can occur at any level of the state proceedings if a state has procedural rules that bar its courts from considering claims not raised in a timely fashion.  *Id.*

The Supreme Court of South Carolina will refuse to consider claims raised in a second appeal that could have been raised at an earlier time.  *See* S.C. Code Ann. § 17-27-90; *Aice v. State*, 409 S.E.2d 392, 394 (S.C. 1991).  Further, if a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he is barred from proceeding in state court.  S.C. App. Ct. R. 203(d)(3) & 243.  If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar.  *See Reed v. Ross*, 468 U.S. 1, 11 (1984); *see also Kornahrens v. Evatt*, 66 F.3d 1350, 1357 (4th Cir. 1995).  As the United States Supreme Court explained:

---

Appeals' decision are not required in order to exhaust all available state remedies." 559 S.E.2d 850, 854 (S.C. 2002) (citing *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 471 S.E.2d 454 (S.C. 1990)).

> [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed*, 468 U.S. at 10–11.

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Further, if the petitioner does not raise cause and prejudice, the court need not consider the defaulted claim. *See Kornahrens*, 66 F.3d at 1363.

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991). Absent a showing of cause and actual prejudice, a federal court is barred from considering the claim. *Sykes*, 433 U.S. at 87. In such an instance, the exhaustion requirement is technically met, and the rules of procedural bar apply. *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *Matthews*, 105 F.3d at 915 (citing *Coleman*, 501 U.S. at 735 n.1; *Teague*, 489 U.S. at 297–98; *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

13

*Cause and Actual Prejudice*

Because the requirement of exhaustion is not jurisdictional, this Court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances—where a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure or where a "fundamental miscarriage of justice" has occurred. *Coleman*, 501 U.S. at 750; *Carrier*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim, where the novelty of the constitutional claim is such that its legal basis is not reasonably available to the petitioner's counsel. *Id.* at 487–89; *Reed*, 468 U.S. at 16. Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice to excuse a default. *Carrier*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. *Engle v. Isaac*, 456 U.S. 107, 134–35 (1982).

As an alternative to demonstrating cause for failing to raise the claim, the petitioner may show a miscarriage of justice. To demonstrate a miscarriage of justice, the petitioner must show he is actually innocent. *See Carrier*, 477 U.S. at 496 (holding a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of someone who is actually innocent"). Actual innocence is defined as factual innocence, not legal innocence. *Bousley v. United States*,

14

523 U.S. 614, 623 (1998).  To demonstrate this actual innocence standard, the petitioner's

case must be truly extraordinary.  *Carrier*, 477 U.S. at 496.

## **DISCUSSION**

As an initial matter, Respondent concedes that Petitioner has exhausted his state

court remedies and that his Petition is timely. [Doc. 24 at 7.] Therefore, the Court proceeds

to consider the merits of Petitioner's sole ground, namely that trial counsel was ineffective

for failing to renew an *in limine* motion to suppress drugs found in Petitioner's car.

Under the AEDPA, a federal court may not grant habeas relief unless the underlying

state court decision was contrary to or an unreasonable application of federal law, as

determined by the United States Supreme Court, 28 U.S.C. § 2254(d)(1), or based on an

unreasonable determination of the facts before the court, *id.* § 2254(d)(2).  The Supreme

Court has held the "contrary to" and "unreasonable application of" clauses present two

different avenues for relief.  *Williams*, 529 U.S. at 405 ("The Court of Appeals for the Fourth

Circuit properly accorded both the 'contrary to' and 'unreasonable application' clauses

independent meaning.").  The Court stated there are two instances when a state court

decision will be contrary to Supreme Court precedent:

> A state-court decision will certainly be contrary to our clearly
> established precedent if the state court applies a rule that
> contradicts the governing law set forth in our cases. . . . A
> state-court decision will also be contrary to this Court's clearly
> established precedent if the state court confronts a set of facts
> that are materially indistinguishable from a decision of this
> Court and nevertheless arrives at a result different from our
> precedent.

*Id.* at 405–06.  On the other hand, a state court decision is an unreasonable application of

Supreme Court precedent when the decision "correctly identifies the governing legal rule

15

but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407–08; *see also Richter*, 131 S. Ct. at 786 ("Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court. . . . It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."). Finally, a decision cannot be contrary to or an unreasonable application of Supreme Court precedent unless applicable Supreme Court precedent exists; without applicable Supreme Court precedent, there is no habeas relief for petitioners. *Virsnieks v. Smith*, 521 F.3d 707, 716 (7th Cir. 2008) (citing *Lockhart v. Chandler*, 446 F.3d 721, 724 (7th Cir.2006); *Simpson v. Battaglia*, 458 F.3d 585, 597 (7th Cir.2006)); *see also Bustos v. White*, 521 F.3d 321, 325 (4th Cir. 2008).

When evaluating a habeas petition based on a claim of ineffective assistance of counsel, assuming the state court applied the correct legal standard—the Supreme Court's holdings in *Strickland*—"[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard."[7] *Richter*, 131 S. Ct. at 785. "A

---

[7] In *Strickland v. Washington*, the United States Supreme Court established that to challenge a conviction based on ineffective assistance of counsel, a prisoner must prove two elements: (1) his counsel was deficient in his representation and (2) he was prejudiced as a result. 466 U.S. 668, 687 (1984). To satisfy the first prong, a prisoner must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. To satisfy the second prong, a prisoner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 692. The Court cautioned that "[j]udicial scrutiny of counsel's performance must be highly deferential," and "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.*; *see also Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (stating judicial review of counsel's performance is "doubly deferential when it is conducted through the lens of federal habeas"). Even if a state court decision questionably constitutes an unreasonable application of federal law, the "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, in such situations, the habeas court must determine whether it is possible for fairminded jurists to disagree that the arguments or theories supporting the state court's decision are inconsistent with Supreme Court precedent. *Id.*

Upon review, the Court determines the South Carolina Supreme Court's denial of Petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent. In his PCR petition, Petitioner claimed that his trial counsel was ineffective for failing to renew a pretrial motion *in limine*. Petitioner and his co-defendant, Kobe Carter ("Carter") made a joint pre-trial motion *in limine* to suppress evidence seized as a result of a routine traffic stop. [Doc. 24-1 at 11.] On the date of Petitioner's arrest, he and Carter were stopped at a traffic safety checkpoint. [*Id.*] Neither Petitioner nor Carter was wearing a seatbelt, and they were given a citation for that violation and for a faulty headlight. [*Id.* at 12.] The officer who stopped the car, Officer Crawford ("Crawford"), testified at the in camera motion hearing that Petitioner and Carter acted suspiciously when Crawford asked to see Petitioner's registration. [*Id.* at 20–21.] He

17

stated that "they were making a lot of furtive movements, that, that I didn't feel was consistent with looking for the, the paperwork to the vehicle . . ." [*Id.* at 20.] Crawford testified that he could not see the passenger well because it was dark outside, so he moved from the driver's side of the car to the passenger's side of the car. [*Id.*] Crawford stated on the record that he was alone and because it was dark and he found the Petitioner and Carter's movements within the car suspicious, Crawford opened the passenger door to observe the car's occupants for his safety. [*Id.* at 22.] Once Crawford opened the passenger door, he observed a bag of crack cocaine on the floor between the passenger seat and the passenger door. [*Id.*] He radioed for assistance and then arrested Petitioner and Carter. [*Id.* at 23.] After the two were placed under arrest, officers searched the vehicle and found another bag of cocaine.  [*Id.*] The search also led to the discovery of marijuana, a set of digital scales and a large amount of cash. [*Id.* at 24–25.]  Defense trial counsel argued in the motion that the search and seizure were invalid because Carter had no legitimate reason to open the passenger door. [*Id.* at 81.] Counsel argued that according to testimony that contradicted Crawford's, the driver side door was already open and the dome light in the car was on; therefore, Crawford was able to observe the movements of the passengers without opening the passenger's door and thus his safety was not in jeopardy. [*Id.*]

The trial court denied the motion *in limine* and allowed the evidence to be admitted at trial.  In so deciding, the trial court found that:

> It appears that the initial purpose of the traffic stop was a legitimate purpose. It further appears that the law enforcement officers acted reasonably upon stopping the vehicle when the defendants were having some difficulty in producing the information required pursuant to the detention.

18

The officer testified that the purpose of opening the vehicle was simply to ensure that he could view the interior of the card and could view the defendants.

He indicated that because of the lighting, because of the circumstances of the particular occasion, that he was unable to see what the defendants, or at least the passenger, was doing with his hands. And apparently the passenger was the one that was searching for the insurance card and/or the registration card. And because he could not see, the officer obviously had a right to protect himself and to ensure that he was safe during the course of the meeting with the defendants.

Because he couldn't see that without having the passenger door open, I think it reasonable – or that he acted reasonably upon opening the passenger door in order to be able to see the defendant's hands to be certain what the defendant was doing.

It was not intended to be a search. It was intending to be an officer protection procedure. And obviously traffic stops, even when thought to be routine, are inherently dangerous, and especially in the dark; and therefore, as I think both sides have suggested, that during such a stop the officers would have an opportunity and would have a right to have the defendants removed from the vehicle in order to ensure their own safety.

So in this case the fact that the officer opened the door so that he could see better is not an unreasonable search; and therefore any seizure was not violative of any constitutional provision.

[*Id.* at 88–90.] Defense counsel objected to the admission of certain drugs later at trial, but for chain of custody issues. [*Id.* at 329–37.] Counsel did not renew the motion to suppress when the evidence was introduced. Therefore, the Court of Appeals did not reach the issue when considering Petitioner's *Anders* brief because the issue was not preserved for appeal.[8]

At the PCR evidentiary hearing, trial counsel admitted that he should have renewed his objection to the evidence obtained during the traffic stop and acknowledged that failing

---

[8] The South Carolina Supreme Court made clear that the Court of Appeals did not consider the merits of Petitioner's Fourth Amendment claim because it was not preserved by trial counsel, and the PCR court erred in finding that the Court of Appeals did make a determination on the merits. [Doc. 24-22 at 7.]

to do so precluded the Court of Appeals from addressing the issue on the merits. [Doc. 24-5 at 43–44.] Notwithstanding this admission, the PCR court found that counsel's performance was not deficient under the *Strickland* standard and found that Petitioner did not suffer any prejudice from counsel's failure to renew the suppression motion. [Doc. 24-5 at 57–58.] Additionally, the PCR court found that the "dismissal of the [*Anders*] appeal appears to be on the merits rather than for a failure to preserve as suggested by the [Petitioner]. *Anders* requires a review of the appeal to determine if any issue briefed has merit. In this case, the issue was raised and found to be without merit. Therefore, attorney error, if any, was harmless." [*Id.* at 58.]

Petitioner filed a petition for writ of certiorari in the South Carolina Supreme Court, seeking review of the PCR court's decision. As noted above, he raised one issue for review:

> Did the PCR judge err in refusing to find counsel ineffective, based on the erroneous assumption that the Court of Appeals ruled upon an unpreserved search issue in the direct appeal review pursuant to *Anders v. California*, 386 U.S. 738 (1967), for failing to preserve for appellate review the admission of drug evidence seized as the result of an unlawful search when counsel moved pre-trial to suppress the drug evidence but then failed to object during trial when the drugs were introduced into evidence?

[Doc. 24 at 4.] The South Carolina Supreme Court granted certiorari and issued a written opinion, affirming the PCR court's conclusion that Petitioner was not entitled to relief, but modifying the judgment to find that counsel was ineffective. [Doc. 24-22.]

The South Carolina Supreme Court undertook a detailed analysis of the procedural and legal issues in Petitioner's case. Applying the standard set forth in *Strickland v.*

20

*Washington*, the Court found that "[c]ontrary to the PCR judge's determination, we find counsel's failure to renew the Fourth Amendment objection constituted deficient performance that satisfies the first prong of the *Strickland* test." [*Id*. at 6.]   The Court then turned to the second prong of *Strickland*, which requires that a petitioner demonstrate prejudice arose from the deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  As discussed, the S.C. Supreme Court rejected the PCR court's conclusion that Petitioner was not prejudiced because the Court of Appeals considered the merits of the issue on its *Anders* review, and therefore found that a merits review of the Fourth Amendment issues raised during the traffic stop was appropriate. [Doc. 24-22 at 7.]

The Court began with a basic history of the Fourth Amendment and search and seizure case law:

> The Fourth Amendment of the United States Constitution guarantees the right of the people to be free from unreasonable searches and seizures and provides that no warrants shall be issued except upon probable cause, supported by oath or affirmation and particularly describing the place to be searched and the persons or things to be seized.  U.S. Const. amend. IV.
>
> .......
>
> "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of [the Fourth Amendment]."  *Whren v. United States*, 517 U.S. 806, 809–10 (1996).  "An automobile stop is thus subject to the constitutional imperative that it not be 'unreasonable' under the circumstances."  *Id.* at 810.  "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred."  *Id.*  (citing *Delaware v. Prouse*, 440 U.S. 648, 659 (1979) and *Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977)).

.........

McHam did not challenge the propriety of his initial stop, so the sole focus of our inquiry is on the validity of the officer's opening of the passenger's side door of the vehicle McHam was driving.  The parties agree that an officer may order the driver and any passengers to exit a detained vehicle without violating the Fourth Amendment.  *See Mimms*, 434 U.S. at 109–10 (holding once a driver has been lawfully detained, the police may order the driver to exit the vehicle, even in the absence of unusual or suspicious behavior, without violating the Fourth Amendment's prohibition on unreasonable searches and seizures; the Court stated, "We think it too plain for argument that the State's proffered justification–the safety of the officer–is both legitimate and weighty" and it "specifically recognized the inordinate risk confronting an officer as he approaches a person seated in an automobile.")

............

[Doc. 24-22 at 7–9.]

The question of whether an officer may open a car door during an otherwise valid traffic stop without violating the Fourth Amendment was a question of first impression for the South Carolina Supreme Court.  The Court took a two-pronged approach: first, whether the act constituted a search, and second, if it was a search, whether the search was justified under the circumstances such that the Fourth Amendment was not violated.  As to the first prong, the Court agreed with Petitioner and found that "the officer's opening of the door of an occupied vehicle constituted a search."  [*Id*. at 9.]   After a review of the case law, the Court held that

Although we are aware of contrary authority, we find the [case law discussed] to be persuasive and hold the opening of the door of an occupied vehicle is an intrusion, however slight, that generally constitutes a search for purposes of the Fourth Amendment.  In such cases, a search results based on the fact that it enables the officer to observe portions of the interior of the vehicle that would not otherwise be readily available to those who are outside the vehicle.  (Citing *State v. Rhodes*, 843 P.2d 927, 928 (Or. 1992) (en banc)).

[*Id.* at 11.]

22

Having determined that the opening of the car door constituted a search, the Court turned to the question of whether the search was justified and reasonable.

"The touchstone of our analysis under the Fourth Amendment is always 'the reasonableness in all the circumstances of the particular governmental invasion of a citizen's private security.'" *Mimms*, 434 U.S. at 108–09 (quoting *Terry v. Ohio*, 392 U.S. 1, 19 (1968)). "Reasonableness, of course, depends 'on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." *Id*. at 109 (citation omitted).

"Warrantless searches and seizures are unreasonable absent a recognized exception to the warrant requirement." *State v. Wright*, 391 S.C. 436, 442, 706 S.E.2d 324, 327 (2011). These exceptions include the following: (1) search incident to lawful arrest, (2) hot pursuit, (3) stop and frisk, (4) automobile exception, (5) the plain view doctrine, (6) consent, and (7) abandonment. [citations omitted.]

Governmental interest in officer safety has been recognized to be a substantial one, and we hold as a general principle that officer safety can justify the opening of a door to an occupied vehicle under reasonable circumstances. *See Mimms*, 434 US. At 110 (observing the governmental interest in officer safety during a traffic stop is substantial); *State v. Brake*, 103 P.3d 699, 704–05 (Utah 2004) (stating there is "a well-developed body of law which recognizes the inherent dangers of traffic encounters and responds to those dangers by permitting law enforcement officers to take measures to protect their safety without risk of violating constitutional protections"; the court further stated "[t]he inherent danger in traffic stops does not, however, justify the warrantless search of the interior of a vehicle" and "a warrantless automobile search requires probable cause and exigent circumstances unless it satisfies traditionally recognized justifications of protecting the safety of the police or the public or preventing the destruction of evidence." (emphasis added).

Having laid out this framework, the Court determined that "the evidence supports a determination that officer safety was a legitimate concern, given the dimly lit conditions at the scene of the stop, the presence of more than one occupant in the vehicle, the fact that the officer was the only one approaching the vehicle at that moment, and the actions of the occupants.

Based on the foregoing, we find that even if trial counsel had renewed his motion in order to preserve the issue, McHam has not shown there is a reasonable probability that the outcome would have been different because his Fourth Amendment claim fails on its merits. Under these circumstances, McHam has not established the requisite prejdice to support his claim of ineffective assistance of counsel. *See generally Foye v. State*, 335 S.C. 586, 518 S.E.2d 265 (1999) (holding PCR was properly denied where the applicant to did prove he was prejudiced by trial counsel's deficient performance in failing to preserve an issue at trial.

23

[Id. at 11–12.]

In conclusion, the South Carolina Supreme Court determined that

> We hold the PCR judge erred in finding counsel was not deficient and we conclude counsel's failure to renew the objection to the drug evidence did constitute deficient performance that satisfied the first prong of *Strickland*. To the extent the PCR judge alternatively found McHam had not satisfied the second prong of *Strickland*–prejudice–because the merits of his Fourth Amendment issue were considered in his direct appeal and rejected, we also find this was error. An appellate court conducting an Anders review searches only for preserved issues of arguable merit. Since the Fourth Amendment issue was not preserved, it was not considered on direct appeal. However, we agree with the PCR judge's ultimate findings that McHam did not establish prejudice and did not prove his claim for ineffective assistance counsel as we conclude McHam's Fourth Amendment claim fails on its merits.

[*Id*. at 12–13.]

This Court finds that the S.C. Supreme Court adequately addressed all these issues within the parameters of Supreme Court precedent. First, the South Carolina Supreme Court applied the *Strickland* standard, which is the applicable United States Supreme Court precedent. Second, the record fails to demonstrate that the state court confronted a set of facts that were materially indistinguishable from those considered in a decision of the United States Supreme Court but arrived at a result different from the Supreme Court precedent. Having considered and applied the appropriate law, the Court concludes the state court's decision was not contrary to applicable Supreme Court precedent. Therefore, the Court turns to a determination of whether the state court made an unreasonable application of Supreme Court precedent, such that fair minded jurists could not disagree on the reasonableness of the state court's decision that the search was valid because of exigent circumstances and the concern for officer safety.

At the outset, it is important to note that Petitioner does not challenge the validity of the initial stop.  In the Petition, he acknowledges that he was stopped at the checkpoint, that his car was making noises–the "brakes were squealing"–and neither Petitioner nor Carter was wearing their seatbelt. [Doc. 1 at 6.] Nor does Petitioner allege error in the Supreme Court's decision, in Petitioner's favor, that the opening of the passenger side door was a search. [*See* Doc. 31.]   Instead, Petitioner argues that while "Petitioner does not contend that the taking of precaution procedures for an officer's safety is not necessary, but [he] only strive[s] to show that the conduct of this officer was for a fishing expedition and not for safety purposes." [*Id.* at 1–2.]  Petitioner makes a factual argument that "this officer had enough light to perform his duties in regards to having the vision to see everything that should have been seen for such a stop or he would have asked the Petitioner and the passenger to exit the car." [*Id.* at 2.] He claims that the officer could not justify the search because there was no reasonable suspicion of criminal activity. [*Id*.]   Petitioner concludes that the drugs found as a result of the search were the fruit of the poisonous tree, and that such evidence being presented to the jury without objection "could have inflamed them to convict." [*Id*. at 3.]

As to his factual argument, Petitioner cannot meet the standard required to overturn the state court's factual findings.  In a habeas proceeding commenced by a state prisoner, "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  Petitioner has provided no evidence to meet his burden of clear and convincing evidence to overturn the state's determination that because Petitioner and Carter were in a vehicle, were searching for the car's registration

25

in such a way that the officer suspected they may be looking for a weapon, and because the stop occurred at night in the dark, that the officer had a reasonable concern for his safety.  As noted in *Pennsylvania v. Mimms* and quoted by the S.C. Supreme Court, "[t]he touchstone of our analysis under the Fourth Amendment is always 'the reasonableness in *all the circumstances* of the particular governmental invasion of a citizen's personal security.'" 434 U.S. 106, 108–09 (1977) (quoting *Terry v. Ohio*, 392 U.S. 1, 19 (1968)) (emphasis added).  Petitioner has presented no evidence to allow this Court to alter the factual "circumstances" found by the state court.        As the state court noted, "[a]lthough no weapons were ultimately found in the car, when viewed at the time of the officer's confrontation, we believe the evidence supports a determination that officer safety was a legitimate concern, given the dimly-lit conditions at the scene of the stop, the presence of more than one occupant in the vehicle, the fact that the officer was the only one approaching the vehicle at that moment, and the actions of the occupants [making 'unusual movements in areas where [the officer] did not think a person would normally look for registration or insurance papers.']." [Doc. 24-22 at 12.] Accepting the factual determination that officer safety was a valid concern, the question becomes whether the state court's application of United States Supreme Court precedent was unreasonable in these circumstances.

In *Mimms*, the Supreme Court held that

> We think it too plain for argument that the State's proffered justification—the safety of the officer—is both legitimate and weighty. "Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties." *Terry v. Ohio, supra,* 392 U.S. at 23, 88 S.Ct. at 1881. And we have specifically recognized the inordinate risk confronting an officer as he approaches a person seated in an automobile.

26

*Mimms,* 434 U.S. at 110.  There, the Court found that requiring the occupant of a vehicle to step outside of the vehicle during a routine traffic stop was not unreasonable, but "a mere inconvenience [that] cannot prevail when balanced against legitimate concerns for the officer's safety." *Id.* at 111.  Relying on *Mimms*, the Supreme Court of South Carolina found that concerns for officer safety made the opening of the car door in this circumstance reasonable.  Importantly in *Mimms*, before requiring the occupant to exit the car, the police had no suspicion of criminal behavior.  *Id.*  Moreover, Supreme Court precedent allows an officer to pat down an individual for weapons once he or she is ordered out of the car "to ensure the officer's safety and the safety of others."  *United States v. Smalls*, 2:09-CR-1339-PMD, 2013 WL 267768, at *4 (D.S.C. Jan. 24, 2013 (quoting *United States v. Sakhi*, 160 F.3d 164, 169 (1998)).  A pat down is arguably more a more intrusive search than opening the car door.

Finally, though not pointed out by Respondent, this District has already dealt with this same issue in Petitioner's co-defendant's habeas petition.  There, Judge Marchant concluded that

> Courts have balanced the interests at issue in such situations and "allowed considerations of officer safety to outweigh [even] fairly intrusive conduct during a traffic stop," including using a flashlight to check the dark interior of a car and opening the door of a vehicle to check for weapons. *Id.* Based on the specific facts in this case including the Petitioner's conduct as shown in the record and the officer's concern for his safety, Petitioner has not shown how an objection by his counsel at trial to the admission of this evidence would have changed the outcome of his trial. *Id.; cf. United States v. Clay,* No. 06–56, 2007 WL 37949 at * *6–7 (D.Nev. Jan. 3, 2007) [Finding based on the facts of the case, that "[o]pening the passenger door was an objectively reasonable measure to determine whether passenger had a weapon and a *de minimis* intrusion."]; *Stanfield,* 109 F.3d at 981 [opening door of a vehicle with darkly tinted windows to check for weapons]; *Pennsylvania v. Mimms,* 434 U.S. 106, 111 (1991) ["Against this important interest we are asked to weigh the intrusion into the driver's personal liberty occasioned not by the initial stop of the

vehicle, which was admittedly justified, but by the order to get out of the car. We think this additional intrusion can only be described as *de minimis* ]; *see generally United States v. King,* No. 07–104, 2008 WL 4099112 (N.D.Ind. Sept. 2, 2008).

*Carter v. McCall*, 9:10-CV-0074-JFA, 2010 WL 4929912, at *7 (D.S.C. Sept. 24, 2010) *report and recommendation adopted,* 9:10-CV-0074-JFA-BM, 2010 WL 4930997 (D.S.C. Nov. 30, 2010).  The Court cannot therefore conclude that the South Carolina Supreme Court was unreasonable in determining that it was valid and not in violation of the Fourth Amendment to open the car door.

## **CONCLUSION**

Wherefore, based upon the foregoing, the Court recommends Respondent's motion for summary judgment [Doc. 15] be GRANTED and the Petition be DENIED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

May 1, 2014
Greenville, South Carolina

28